**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, THOMAS N. PIALI, DENISE
RICHARDSON, ANTHONY D'AQUILA, THOMAS
GESUALDI, LOUIS BISIGNANO, DOMINICK
MARROCCO, AND ANTHONY PIROZZI, as Trustees
and Fiduciaries of the Local 282 Welfare Trust Fund, the
Local 282 Pension Trust Fund, the Local 282 Annuity
Trust Fund, the Local 282 Job Training Trust Fund, and
the Local 282 Vacation and Sick Leave Trust Fund,

                        Plaintiffs,                                  **REPORT AND
RECOMMENDATION**

                     - against -                                     CV 09-1330 (ADS) (AKT)

SUKRAM AND SONS TRUCKING, INC.,

                        Defendant.
----------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Following the notation of default and entry of a default judgment against Defendant Sukram and Sons Trucking, Inc., ("Sukram" or "Defendant"), District Judge Spatt referred this matter to me for an inquest as to damages, including reasonable attorneys' fees and costs, if appropriate. *See* DE 6-7.

Plaintiffs are Trustees of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, "Plaintiffs" or the "Funds") who brought this action pursuant to Sections 502(a)(3) and 515 of the Employer Retirement Income Security

Act of 1974, as amended ("ERISA"),[1] for Defendant's failure to permit the Funds to conduct an audit of its books and records and for failing to contribute to the Funds on behalf of their covered employees arising out of a Collective Bargaining Agreement ("CBA") between Local 282 and various employers including Defendant Sukram.

Plaintiffs seek an award of unpaid fringe benefit contributions for the period from September 1, 2007 through April 30, 2009, as well as interest, liquidated damages, audit fees, costs and attorneys' fees. *See* Pls.' Mem. of Law in Supp. of their Mot. For Default Judgment ("Pls.' Mem.") at 5-9. According to Plaintiffs' unchallenged allegations, the full amount owed, including principal contributions, interest, liquidated damages, audit fees, costs and attorneys' fees, is $98,684.90. *See id.* at 9.

Based upon the information submitted by Plaintiffs and for the reasons stated below, I respectfully recommend to Judge Spatt that $98,865.50 in damages be awarded to Plaintiffs, broken down as follows: (1) $52,844.84 for unpaid contributions; (2) $19,187.91 in interest; (3) $19,187.91 in liquidated damages; (4) $350 in audit fees; and (5) $7,294.84 in attorneys' fees and costs.[2]

## II. BACKGROUND

By virtue of having executed a project labor agreement for the Brooklyn Atlantic Yards Project, the Defendant became bound to the July 1, 2006 through June 30, 2009 New York City Heavy Construction & Excavating Contract with Local 282, I.B.T. (the CBA) for all work done

---

[1] Codified as 29 U.S.C. §§ 1132(a)(3) and 1145.

[2] As discussed *supra*, liquidated damages and interest continue to accrue at a daily rate of $18.41 each or $36.82 collectively.

in connection with the Brooklyn Atlantic Yards Project. Compl., ¶ 10. The CBA requires employers to make benefit contributions to the Funds on behalf of their covered employees, at specified rates for each hour of covered employment. *Id.,* ¶ 11. The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (hereinafter "Trust Agreement") for purposes of collecting and receiving contributions and providing benefits. *Id.,* ¶ 7. Section 13(G) of the CBA binds employers to the Trust Agreement. *Id.,* ¶ 12. The Trust Agreement requires employers to submit remittance reports to the Trustees, which include the number of employees covered by the CBA and the number of hours worked, along with payment to the Funds. *Id.,* ¶ 13. Further, Article IX, Section 1(d) of the Trust Agreement requires an employer to submit to periodic audits of its relevant books and records. *Id.,* ¶ 14.

Pursuant to Article IX, Section 1(e) of the Trust Agreement, an employer who fails to submit the required remittance reports and/or pertinent books and records within 20 days of written demand must pay an increased monthly contribution. *Id.,* ¶ 19. Under Article IX, Section 3, an employer is not only required to pay the contributions as owed, but also interest on the monies due, liquidated damages, attorney's fees, audit fees, filing fees, and costs. *Id.,* ¶ 21.

By letter dated December 12, 2008, the Funds' auditors requested that Defendant submit to an audit for the period commencing September 1, 2007 through October 21, 2008. *Id.,* ¶ 22. A subsequent letter dated February 26, 2009, this time from the Funds' counsel, again requested that Defendant submit to an audit. *Id.,* ¶ 23. Despite these requests, Defendant failed to submit to an audit or make payments to the Funds. *Id.,* ¶ 24. Thus, this action was commenced on March 31, 2009. *See* DE 1. The Defendant was served by service upon the Secretary of State on April 6, 2009, and proof of that service was filed with the Court on April 13, 2009. *See* DE 2.

After Defendant failed to answer or otherwise move with respect to the Complaint, on October 16, 2010, Plaintiffs moved for entry of a default against Defendant. *See* DE 5. The Clerk of the Court entered Sukram's default on October 20, 2009. *See* DE 6. On May 13, 2010, Judge Spatt entered a default judgment. *See* DE 7.

## III. DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).

For purposes of an inquest, the Court generally accepts as true all of the well-pleaded factual allegations set forth in the Complaint, except those related to damages. *See Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-CV-1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158; *see also Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (determining that a Court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty" after an entry of default).

"The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). Plaintiffs have submitted the following documents in support of their request for an award of damages: (1) Plaintiffs' Memorandum of Law in Support of their Motion for Default Judgment [DE 9]; (2) Supplemental Declaration of Michael S. Adler ("Adler Decl."), associate at Cohen, Weiss and Simon LLP, outside counsel for Plaintiffs, with annexed exhibits including the firm's invoices and Plaintiffs' revised statement of amounts due [DE 10];[3] (3) Declaration of Theresa Cody ("Cody Decl."), supervisor of the Collections Department of the Local 282 Trust Funds, with annexed exhibits including the Trust Agreement, correspondence from the Funds to the Defendant regarding the CBA which was countersigned and agreed to by Defendant, the CBA, remittance reports from Defendant, and a summary schedule of discrepancies owed by Defendant [DE 5]; and the Supplemental Declaration of Theresa Cody ("Cody Supp. Decl.") with a revised summary schedule of discrepancies [DE 11].

The Court finds that Plaintiffs' submissions provide sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the information set forth in Plaintiffs' submissions and as evaluated by the Court.

---

[3] Plaintiffs filed the Declaration of Michael Adler with their motion for default judgment on October 19, 2009. *See* DE 3. However, the Supplemental Declaration of Michael Adler supersedes his previous declaration.

### A. Unpaid Contributions

Plaintiffs seek to recover unpaid contributions totaling $52,844.84 for the period September 1, 2007 through April 30, 2009 pursuant to 29 U.S.C. § 1132(g)(2). *See* Pls.' Mem. at 5. Under ERISA, where a plan recovers judgment in its favor, a plaintiff is entitled to have the defendant pay the full amount of unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(A). Plaintiffs allege that the Defendant was bound by the CBA, and thus was required to submit to an audit of its books and records, which Defendant failed to do. *Id.* at 3. Thus, under the Trust Agreement, Plaintiffs allege that the Trustees have the right to estimate the amount of contributions due based on formulae provided by the Trust Agreement. *Id.* at 4-5. In light of Defendant's default, these allegations are accepted as true and the Defendant is liable for the unpaid fringe benefits.

To support their damages claim for unpaid contributions, Plaintiffs submitted to the Court the Declaration of Theresa Cody with accompanying copies of the CBA and Trust Document. *See* Cody Decl., Exs. A, C. The Defendant also acknowledged and countersigned correspondence from the Funds dated January 23, 2008 which advised Defendant that by executing the project labor agreement for the Brooklyn Atlantic Yards Project, Defendant Sukram was bound to the CBA. *Id.*, Ex. B. Pursuant to Article IX, Section 1(d) of the Trust Agreement, Defendant was required to submit to periodic audits of its books and records in connection with its contributions to the Funds. *Id.*, ¶ 10 and Ex. A at 27.

Once the Defendant failed to submit to an audit, the Funds were permitted to estimate the amount of contributions owed based on one of two formulae provided in the Trust Agreement based on whether the employer submitted remittance reports for the period sought to be audited. *Id.*, ¶ 13. Where an employer submits remittance reports for a given month but fails to permit an

6

audit, Article IX, Section 1(f) of the Trust Agreement provides that estimated additional contributions are computed by taking 50% of the number of hours reported by the employer for that month and multiplying that figure by the current contribution rate. *Id.,* Ex. A at 29. For months during which the employer fails to submit remittance reports, Article IX, Section 1(e) provides that the estimated contribution is determined by adding 10% to the number of hours for the month in which the greatest number of hours were reported in the previous twelve remittance reports and multiplying that figure by the current contribution rate. *Id.,* Ex. A at 28

The Defendant submitted remittance reports to the Funds for only 8 of the 20 months between September 2007 through April 2009. *Id.,* ¶ 17. Those months for which Defendant did submit reports included September 2007 through November 2007, and March 2008 through July 2008. *Id.,* Ex. D. Pursuant to the CBA, the contribution rates an employer must pay for each hour worked for its covered employees for each Fund are as follows: (1) Welfare Fund, $9.60; (2) Pension Fund, $7.00; (3) Annuity Fund, $9.1525; (4) Job Training Fund, $.10; Vacation and Sick Leave Fund, $3.35. *Id.,* ¶ 19 and Ex. E. The Funds conducted their own audit of the September 2007 through April 2009 period in accordance with the estimate provisions in the Trust Agreement and concluded that Defendant owed the Funds $52,844.84 in contributions. *Id.,* ¶¶ 20-24 and Ex. F.

After a review of the CBA, Trust Agreement, remittance reports submitted by Defendants and the audit conducted by the Trust, the Court finds $52,844.84 to be accurate. Defendants submitted the following remittance reports: September 2007 totaling 64 hours; October 2007 totaling 128 hours; November 2007 totaling 48 hours; and March 2008 through July 2008 totaling 0 hours. Thus, after applying the additional 50% to the total hours, pursuant to the Trust

7

Agreement, the hours to be applied for September, October and November 2007 are 32, 64, and 24 respectively, and 0 for March through July 2008. For the other 12 months when no remittance reports were submitted by Defendant, pursuant to the Trust Agreement, the highest hours found in the prior 12 remittance reports – in this case October's 128 hours – is applied plus an additional 10%. This calculation yields 140.8 hours for each non-reported month or 1,689.6 hours. Adding all hours together for the 20 months mentioned above results in a total of 1,809.60 hours. Taking the total hours and multiplying that figure by the per hour contribution rates for each Fund yields the following results: (1) $17,372.16 for the Welfare Trust (1,809.6 x $9.6); (2) $12,667.20 for the Pension Trust Fund (1,809.6 x $7.00); (3) $16,562.36 for the Annuity Trust Fund (1,809.6 x $9.1525; (4) $201.78 for the Job Training Trust Fund (1,809.6 x $.10); and (5) $6,062.16 for the Vacation and Sick Leave Trust Fund (1,809.6 x $3.35) for a total of $52,844.84. Accordingly, this Court finds that the Plaintiffs are entitled to the sum of $52,844.84 for unpaid contributions.

### B. Interest On Unpaid Contributions

Under ERISA, the Funds are also entitled to recover interest on the unpaid fringe benefits at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund,* 06-CV-2953, 2007 WL 2712314, at *3, n.4 (quoting 29 U.S.C. § 1132(g)(2)).

Plaintiffs assert that the Trust Agreement provides for interest at the rate of 1.5% percent per month, or 18% per year on the delinquent contributions. *See* Cody Aff., ¶¶ 27-28. Plaintiff's assertion is confirmed by an Amendment to Article IX, Section 3 which states that the interest rate is 1.5% per month. *Id.,* Ex. A.at A9. Based on this interest rate, Plaintiffs allege that the

total amount of interest due between October 1, 2007 through September 22, 2010 is $19,187.91. *See* Pls.' Mem. at 6; Cody Supp. Decl., ¶ 6.

Pursuant to Article IX, Section 3 of the Trust Agreement, interest is calculated from the first day of the month when the payment is due up until the date payment is made. Cody Decl. ¶ 29 and Ex. A at 30. As interest began accruing for the delinquent September 2007 contributions on October 1, 2007, Plaintiffs calculated interest by taking 18% of the contributions due for the period at issue, dividing that by 365 to determine the daily interest rate and then multiplying that rate by the number of days between October 1, 2007 through September 22, 2010.[4] Plaintiffs submit an in-depth interest worksheet that clearly computes the interest owed on the $52,844.84 in unpaid contributions for each Fund, totaling $19,187.91. *See* Cody. Sup. Decl., Ex. A. Those calculations are confirmed by the Court's independent calculations. Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded interest on the unpaid contributions from October 1, 2007 through September 22, 2010 in the amount of $19,187.91, along with additional interest in the amount of $18.41 per diem until judgment is entered.

**C.     Liquidated Damages**

Plaintiffs also seek an award of liquidated damages as contemplated by the CBA and pursuant to the applicable provisions of the ERISA statute. *See* Pls.' Mem. at 6-7; Cody Supp. Decl., ¶ 7. In accordance with 29 U.S.C. § 1132(g)(2) and Article IX, Section 3(d) of the Trust Agreement, the Defendant is required to pay additional damages equal to the greater of

---

[4]     September 22, 2010 was the date Plaintiffs submitted their papers in support of their damages. According to the Trust Agreement, daily interest continues to accrue.

(i) interest on the unpaid contributions or (ii) 20% of the contribution deficiency. Since 20% of the contribution deficiency ($52,844.84) would yield $10,568.97 while the interest owed to Defendant is $19,187.91, the greater amount is the interest on the unpaid contributions. Plaintiffs also argue that liquidated damages continue to accrue at a daily rate of $18.41 since the total interest figure continues to accrue at this daily rate. *See* Pls.' Mem. at 6. This District has granted such a request previously. *See La Barbera v. Les Sub-Surface Plumbing, Inc.,* No. 06-CV-3343, 2008 WL 906695, at *7 (E.D.N.Y. Apr. 3, 2008). Therefore, I respectfully recommend to Judge Spatt that Plaintiffs be awarded liquidated damages equivalent to the amount of interest on the unpaid contributions in this action, which is $19,187.91, plus $18.41 for each day subsequent to September 22, 2010 until the date that judgment is entered.

### D. Fees and Costs

#### I. Audit Costs

Plaintiffs request damages of $350.00 for audit fees incurred. *See* Pls' Mem. at 7. While ERISA does not specifically mention the recovery of auditor fees, it allows for such other legal or equitable relief as the court deems appropriate and courts in this District have interpreted this provision to include audit fees. *See* 29 U.S.C. § 1132(g)(2)(E); *See La Barbera v. Tadco Const. Corp.,* 647 F. Supp. 2d 247, 254 (E.D.N.Y. 2009) (awarding audit costs under similar Trust Agreement provision at issue here); *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.,* No. 08-CV-116, 2009 WL 2461738 (E.D.N.Y. Aug. 11, 2009) (holding that "ERISA allows for the recoupment of such [audit] costs"). In fact, Article IX, Section 3(b) of the Trust Agreement specifically allows for the recovery of $350 in auditor's

fees. *See* Cody Decl., Ex. A at 30. Thus, I respectfully recommend to Judge Spatt that Plaintiffs be awarded $350.00 in audit costs.

2. *Attorneys' Fees*

Plaintiffs seek to recover attorneys' fees in the amount of $7,550.90.[5] Pls.' Mem. at 8. Attorneys' fees are recoverable damages pursuant to 29 U.S.C. § 1132(g)(2)(D) and Article IX, Section 3(a) of the Trust Agreement. Courts within the Second Circuit determine appropriate attorneys' fees according to a standard of a "presumptively reasonable fee."[6] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189 (2d Cir. 2007). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.

---

[5] Apparently, between March 1, 2009 through February 28, 2010, the Trustees and Cohen, Weiss and Simon agreed to a ten percent reduction in legal fees that is not reflected in the bills submitted. *See* Cody Decl., ¶ 13. Although counsel's bills reflect attorneys' fees of $8,168.50, they request attorneys' fees of $7,550.90 which takes into account the agreed upon discount . *Id.,* ¶ 16.

[6] The Second Circuit has recommended abandoning the term "lodestar" as its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Services, Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). In order to apply out-of-district rates, a party must overcome a presumption in favor of the forum rule. *See Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 191. To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons,* 575 F.3d at 172. The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[7] and remain mindful that "a

---

[7] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

In 2007, the Eastern District observed that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Medical Services PC,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007). (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner, $150 hourly rate for associate, and $75 hourly rate for legal assistant). It appears that these figures, with minimal changes, remain in effect. *See Said v. SBS Elecs, Inc.*, No. CV 08-3067, 2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (holding that "hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $100 to $150 for junior associates, and $70 to $80 for legal assistants."). However, in ERISA default cases such as *Cho*, Courts in this District have consistently approved rates that are closer to the lower range of fees allowed. *See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund,* No 08-CV-116, 2009 WL 2461738, at *4 (finding reasonable for a team of three associates and four paralegal hourly rates ranging from $75.00 to $200.00); *Finkel v. Tripe A Group Inc.,* No. 07-CV-2653, 2010 WL 1688359, at *3 (E.D.N.Y. Apr. 27, 2010) (in delinquent contribution case under ERISA, the court found attorney's hourly rates ranging from $200 to $225 to be reasonable); *Gesualdi v. Mack Excavation & Trailer Serv., Inc.,* No. 09-CV-2502,

---

customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

2010 WL 985294, at *3 (E.D.N.Y. Mar. 15, 2010) (awarding attorney's fees based on a $275 hourly rate in ERISA default judgment action based upon counsel's 40 years of legal experience and ERISA experience).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted).

Counsel for Plaintiffs charged: (1) $370 per hour for time billed by Partner Elizabeth O'Leary; (2) $275 per hour for time billed by associates Oriana Vigliotti and Michael Adler; and (3) $90 per hour for time billed by paralegals Elizabeth Ellis and David Ward. *See* Adler Decl., ¶¶ 14-15. Plaintiffs argue that these billing rates are in line with or less than those charged by other firms performing similar work within the Eastern and Southern Districts of New York. *See* Pls.' Mem. at 8. To support their position, Plaintiffs cite three Southern District cases and one Eastern District case. *Id.* Regarding the Southern District cases cited, Plaintiffs have not provided the Court with any factual information specific to the circumstances of this case which

14

would warrant the Court's applying a rate other than the prevailing Eastern District rates.  The Court notes that the one Eastern District case cited by Plaintiffs preceded the Second Circuit's opinions of *Arbor Hill* and *Simmons*.  After comparing the rates of counsel for Plaintiffs with those recently approved in this District for ERISA contribution cases based on a Defendant's default, this Court believes that an application of the prevailing per hour rates of $300 for Partner, $225 for associates and $80 for paralegals is appropriate.

Plaintiffs' counsel also provided the Court with the firm's time records which capture all time billed to this matter from March 17, 2009 through September 21, 2010.  *See* Adler Decl., Ex. B.  The time records describe what tasks were performed on behalf of Plaintiffs in connection with the case and by whom, along with the dates on which such tasks were performed and the amount of time expended.  *Id.*  In total, Partner O'Leary billed 1.7 hours; Associate Vigliotti billed 2.5 hours; Associate Adler billed 22.2 hours; Paralegal Ellis billed 7.7 hours and Paralegal Ward billed .6 hours.  *Id.,* ¶ 15 and Ex. B.  After a review of the invoices submitted by Plaintiffs' counsel, the Court does not find any unreasonable, excessive or unnecessary time that should be excluded.  Accordingly, the Court finds that all 34.7 hours expended by Plaintiffs' counsel are properly included in calculating the attorneys' fee award.

Applying the revised billing rates to the hours expended by each attorney or paralegal who billed to this matter yields the following fees: for Partner O'Leary, $510; Associate Adler, $4,995; Associate Vigliotti, $562.50; Paralegal Ellis, $616; and Paralegal Ward, $48. Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded attorneys' fees in the total amount of $6,731.50.

3. *Costs*

Finally, Plaintiffs seek costs and disbursements in the amount of $563.34. Adler Decl., ¶ 19. ERISA allows for the recovery of reasonable costs. *See* 29 U.S.C. § 1132(g)(2)(D). Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). The costs incurred by Plaintiffs include photocopying, postage, process service fees and filing fees. *See* Adler Decl., Exs. B, C. These expenses all serve as a proper basis for reimbursement. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998) (finding that expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are expenses that are ordinarily recoverable). Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded costs in the amount of $563.34.

## IV. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiffs be awarded $98,865.50 in damages plus $36.82 for each day after September 22, 2010 until judgment is entered, pursuant to the following amounts:

- $52,844.84 for unpaid fringe benefits;

- $19,187.91 for interest on the unpaid fringe benefits through September 22, 2010, with additional interest accruing at a daily rate of $18.14 until judgment is entered;

- $19,187.91 in liquidated damages through September 22, 2010, with additional interest accruing at a daily rate of $18.14 until judgment is entered;

- $350 in audit fees; and

- $7,294.84 in attorneys' fees and costs.

16

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon Defendant forthwith by overnight mail and first class mail and to file proof of service on ECF.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt. Any request for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
November 8, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge